**2015-1277**

IN THE

# UNITED STATES COURT OF APPEALS
### FOR THE FEDERAL CIRCUIT

TRADING TECHNOLOGIES INTERNATIONAL, INC.,

*Plaintiff-Appellee*,

v.

CQG, INC. and CQGT, LLC,

*Defendants-Appellants*.

**Appeal from the United States District Court for the Northern District of Illinois in Case No. 05-CV-4811, Judge Sharon Johnson Coleman.**

## BRIEF OF PLAINTIFF-APPELLEE
## TRADING TECHNOLOGIES INTERNATIONAL, INC.

Leif R. Sigmond, Jr.
Jennifer M. Kurcz
MCDONNELL, BOEHNEN,
    HULBERT & BERGHOFF, LTD.
300 South Wacker Drive, Suite 3200
Chicago, Illinois 60606
(312) 913-0001

Steven F. Borsand
TRADING TECHNOLOGIES
    INTERNATIONAL, INC.
222 South Riverside, Suite 1100
Chicago, Illinois 60606
(312) 476-1000

Erika H. Arner
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700

C. Brandon Rash
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000

*Attorneys for Plaintiff-Appellee*
*Trading Technologies International, Inc.*

April 3, 2015

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Plaintiff-Appellee Trading Technologies International, Inc.

certify the following:

1.     The full name of every party or amicus represented by me is:

Trading Technologies International, Inc.

2.     The names of the real parties in interest represented by me are:

Trading Technologies International, Inc.

3.     All parent corporations and any publicly held companies that own 10

percent or more of the stock of the party or amicus curiae represented by me are:

None

4.     The names of all law firms and the partners or associates that

appeared for the party or amicus now represented by me in the trial court or agency

or are expected to appear in this Court are:

**Finnegan, Henderson, Farabow, Garrett & Dunner, LLP**: Erika H. Arner, C. Brandon Rash

**Irwin IP LLC**: Barry F. Irwin

**McDonnell, Boehnen, Hulbert & Berghoff, Ltd.**: Paul H. Berghoff, Alan Wayne Krantz, Andrea Kay Orth, Brandon J. Kennedy, Christopher D. Butts, Dennis David Crouch, Jennifer M. Kurcz, Jeremy E. Noe, Kristen L. Thomson, Leif R. Sigmond, Jr., Matthew J. Sampson, Michael David Gannon, Michelle Lynn McMullen-Tack, Paul A. Kafadar, Paul S. Tully, S. Richard Carden, Cole Bradley Richter.

**Lee Sullivan Shea & Smith:** George I. Lee

**Trading Technologies International, Inc.:** Steven F. Borsand

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF RELATED CASES ................................................ vii

STATEMENT OF JURISDICTION .....................................................1

I.   COUNTERSTATEMENT OF THE ISSUES .................................2

II.  PRELIMINARY STATEMENT .....................................................2

III. STATEMENT OF THE CASE ........................................................4

    A.   The Patents-in-Suit ...............................................................4

    B.   This Case Began in 2005, When CQG Filed a Declaratory
        Judgment Action Seeking to Invalidate the Patents-in-Suit ................7

    C.   Discovery and Trial Are Complete .......................................8

    D.   The District Court Found That the Claims of the Patents-in-Suit
        Were Patent Eligible Under § 101 ........................................9

    E.   A Third Party Petitioned for CBMR of the Patents-in-Suit, and
        the PTO Denied Institution on the '304 Patent ...................10

    F.   CQG Moved to Stay This Action Pending the Third Party's
        CBMR of the '132 Patent, Which the District Court Denied ............11

    G.   Two Years After CBMR Became Available, One Month After
        CQG Filed Its Motion to Stay, and Just One Month Before
        Trial, CQG Sought Review of the Patents-in-Suit .............13

    H.   CQG Moved to Stay Pending Appeal and to Expedite This
        Appeal, Which This Court Denied ......................................14

IV.  SUMMARY OF ARGUMENT ....................................................15

V.   ARGUMENT ...............................................................................17

    A.   Standard of Review ..............................................................17

    B.   This Appeal Should Be Dismissed as Moot ........................18

i

C.   Alternatively, the District Court's Denial of the Requested Stay
     Should Be Affirmed ............................................................21

     1.   A stay pending a third-party CBMR of the '132 patent
          would not have substantially simplified issues or
          streamlined the trial...................................................21

     2.   At the time of CQG's motion, discovery was nearly
          complete, and trial was imminent. ............................27

     3.   A stay would unduly prejudice TT and award CQG a
          clear tactical advantage. ...........................................32

     4.   A stay would not have reduced the burden of litigation...........40

D.   CQG Imposes an "Extraordinary and Extremely Rare" Test Not
     Found in the Statute, but Even Under This Extra-Statutory Test,
     the District Court's Decision Should Be Affirmed ............................43

VI.  CONCLUSION.............................................................45

# TABLE OF AUTHORITIES

**Cases**

*ADA Solutions, Inc. v. Engineered Plastics, Inc.*,
  826 F. Supp. 2d 348 (D. Mass. 2011) ................................................32

*Apple Inc. v. Rensselaer Polytechnic Institute & Dynamic Advances, LLC*,
  IPR2014-00319, Paper 12, Decision (PTAB June 12, 2014) ...........................27

*Audatex North America Inc. v. Mitchell International Inc.*,
  No. 13-CV-1523-BEN (BLM), 2014 WL 4546796 (S.D. Cal. Sept. 12,
  2014) ....................................................................... 33, 35

*Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
  No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) .............36

*Belden Technologies Inc. v. Superior Essex Communications LP*,
  No. 08-63-SLR, 2010 WL 3522327 (D. Del. Sept. 2, 2010) ..................... 29, 38

*Benefit Funding Systems LLC v. Advance America Cash Advance
  Centers Inc.*, 767 F.3d 1383 (Fed. Cir. 2014) ....................................17

*Biomet Biologics, LLC v. Bio Rich Medical, Inc.*,
  No. SACV 10-1582 DOC (PJWx), 2011 WL 4448972 (C.D. Cal. Sept.
  26, 2011) ..................................................................36

*Boston Scientific Corp. v. Cordis Corp.*,
  777 F. Supp. 2d 783 (D. Del. 2011) ......................................... 28, 38

*Brennan v. Kulick*,
  407 F.3d 603 (3d Cir. 2005) ...............................................27

*Chamber of Commerce of United States v. Whiting*,
  131 S. Ct. 1968 (2011) ....................................................43

*Church of Scientology of California v. United States*,
  506 U.S. 9 (1992) .........................................................3, 18

*Dane Technologies, Inc. v. Gatekeeper Systems, Inc.*,
  No. 12-cv-2730, 2013 WL 4483355 (D. Minn. Aug. 20, 2013) ......................22

*Davol, Inc. v. Atrium Medical Corp.*,
   No. 12-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013) ........................36

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ................................................................. 10, 11

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) .......................................................................42

*ESN, LLC v. Cisco Systems, Inc.*,
   No. 5:08-CV-20, 2008 WL 6722763 (E.D. Tex. Nov. 20, 2008).......................37

*Gilead Sciences, Inc. v. Lee*,
   778 F.3d 1341 (Fed. Cir. 2015) ................................................................. 43, 44

*Intellectual Ventures II LLC v. JPMorgan Chase & Co.*,
   No. 2014-1724, slip op. (Fed. Cir. Apr. 1, 2015) ................................. 26, 31, 38

*Invensys Systems, Inc. v. Emerson Electric Co.*,
   No. 6:12-cv-799, 2014 WL 4477393 (E.D. Tex. July 25, 2014)................. 28, 41

*Market-Alerts Pty. Ltd. v. Bloomberg Financial L.P.*,
   922 F. Supp. 2d 486 (D. Del. 2013).......................................................... 28, 32

*Mills v. Green*,
   159 U.S. 651 (1895).........................................................................................18

*National Football League Players Ass'n v. Pro Football, Inc.*,
   56 F.3d 1525 (D.C. Cir. 1995), *vacated in part on reh'g*, 79 F.3d 1215
   (D.C. Cir. 1996) ....................................................................................... 18, 19

*Nken v. Holder*,
   556 U.S. 418 (2009).........................................................................................21

*Oracle Corp. v. Parallel Networks, LLP*,
   No. 06-414-SLR, 2010 WL 3613851 (D. Del. Sept. 8, 2010)...........................29

*Procter & Gamble Co. v. Team Technologies, Inc.*,
   No. 12-cv-552, 2014 WL 533494 (S.D. Ohio Feb. 11, 2014).................... 22, 23

*Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.*,
   No. 2:13CV213-JRG-RSP, 2015 WL 627887 (E.D. Tex. Jan. 29, 2015)..........37

*Rensselaer Polytechnic Institute v. Apple Inc.*,
    No. 1:13-CV-0633 (DEP), 2014 WL 201965 (N.D.N.Y. Jan. 15, 2014)...........37

*Sage Products, Inc. v. Devon Industries, Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997) .........................................................................35

*SecureBuy, LLC v. Cardinal Commerce Corp.*,
    No. 13-cv-1792, 2014 WL 1217723 (D. Del. Mar. 21, 2014)............................29

*Segin Systems, Inc. v. Stewart Title Guaranty Co.*,
    No. 2:13-cv-190, 2014 WL 1315968 (E.D. Va. Mar. 31, 2014) ..... 32, 33, 37, 38

*St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*,
    No. Civ. A. 01-557JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003)................39

*TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*,
    No. 13-CV-02218-JST, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013) ............23

*Trading Technologies International, Inc. v. eSpeed, Inc.*,
    595 F.3d 1340 (Fed. Cir. 2010) ...........................................................................5

*Trover Group, Inc. v. Dedicated Micros USA*,
    No. 2:13-CV-1047, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015)...... 22, 23, 38

*U.S. Railroad Retirement Board v. Fritz*,
    449 U.S. 166 (1980).........................................................................................44

*Ultramerical, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .........................................................................23

*Unifi Scientific Batteries, LLC v. Sony Mobile Communications AB*,
    No. 6:12-cv-221, 2014 WL 4494479 (E.D. Tex. Jan. 14, 2014)......................29

*United States v. Arvizu*,
    534 U.S. 266 (2002).........................................................................................17

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
    No. C 12-05501 SI, 2014 WL 121640 (N.D. Cal. Jan. 13, 2014) .....................35

*Versata Software, Inc. v. Callidus Software, Inc.*,
    771 F.3d 1368 (Fed. Cir. 2014), *vacated*, No. 2014-1468, 2015 WL
    981523 (Fed. Cir. Feb. 27, 2015)............................................................. passim

v

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014) ................................................................ passim

*Walker Digital, LLC v. Google, Inc.*,
   No. 11-cv-318, 2014 WL 2880474 (D. Del. June 24, 2014) ....................... 29, 36

*Woodard v. Sage Products, Inc.*,
   818 F.2d 841 (Fed. Cir. 1987) .......................................................................19

*Zillow, Inc. v. Trulia, Inc.*,
   No. C12-1549JLR, 2013 WL 5530573 (W.D. Wash. Oct. 7, 2013) ..................31

**Statutes**

35 U.S.C. § 325(a) .................................................................................................27

Leahy-Smith America Invents Act, § 18 ........................................................ passim

**Other Authorities**

157 Cong. Rec. E1183 (daily ed. June 23, 2011) (statement of Rep. Smith)..........39

157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) .......42

157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer)  44, 45

## **<u>STATEMENT OF RELATED CASES</u>**

Plaintiff-Appellee Trading Technologies International, Inc. ("TT") is unaware of any related cases within the meaning of Fed. Cir. R. 47.5.

# STATEMENT OF JURISDICTION

The district court has subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331 and 1338(a). Pursuant to § 18(b)(2) of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284, 331 (2011), at the time Defendants-Appellants CQG, Inc. and CQGT, LLC (collectively "CQG") filed their Notice of Interlocutory Appeal, this Court had jurisdiction to review the district court's January 13, 2015 decision to deny a stay of this action pending a third party's covered business method review ("CBMR") of U.S. Patent No. 6,772,132 that the U.S. Patent and Trademark Office ("PTO") has instituted. This Court, however, lacks jurisdiction to review any district court decision with respect to noninstituted CBMR petitions, which CQG filed at the PTO after filing its motion to stay in district court. In addition, because intervening events have eliminated the relief CQG sought, i.e., to avoid the burden of some discovery and trial, this appeal is moot, and the Court now lacks jurisdiction over this appeal.

## I.     COUNTERSTATEMENT OF THE ISSUES

1. Whether the Court should dismiss this appeal where (1) the relief CQG sought—a stay of this patent infringement action pending a third party's CBMR at the PTO to avoid some discovery and the burden of trial—has become moot due to the trial being complete, leaving no effectual relief that may be granted to CQG; and (2) the district court has already ruled on the single ground raised in the CBMR, i.e., patent eligibility under 35 U.S.C. § 101.

2. Alternatively, whether the district court properly denied staying trial proceedings pending the third party's CBMR, where the CBMR only involved eligibility under § 101 for just one of the two patents-in-suit; where CQG refused to be bound by the outcome of this CBMR; where, at the time CQG filed its motion to stay, ten years of litigation had passed, substantially all of discovery was complete, and trial was scheduled for just two months away (which would decide, *inter alia*, the identical § 101 issue); and where CQG delayed the filing of its own CBMR petitions (which the PTO has not instituted) more than two years after CBMR became available until just one month before trial, when the same issues CQG raised in its petitions would be decided by the district court.

## II.     PRELIMINARY STATEMENT

This appeal is moot.  CQG sought to stay this action pending a third party's CBMR on one of the two patents-in-suit to avoid some discovery and the burden of

trial. At this time, no discovery remains, trial is complete, and the district court has

entered judgment in TT's favor—including on the only issue raised in the CBMR,

i.e., patent eligibility under § 101. A stay now would not simplify the proceedings

or reduce the burden of litigation. Nor would a stay benefit the district court by

allowing it to consider any decision the PTO issues, because the court has already

decided on § 101. CQG belatedly filed its own CBMR petitions on the patents-in-

suit after filing its motion to stay and one month before trial, but the district court

already decided the issues raised in those petitions as well. In fact, CQG conceded

in earlier briefing that this appeal would be moot once trial commenced because no

court could grant effectual relief. Accordingly, because courts have no authority to

give opinions on moot questions, or to declare rules of law which cannot affect the

matter in issue in the case before it, *see Church of Scientology of Cal. v. United

States*, 506 U.S. 9, 12 (1992), this appeal should be dismissed.

Alternatively, the district court's decision to deny CQG's motion to stay

pending a third party's CBMR should be affirmed. When CQG filed its motion,

this case was ten years old and two months from trial. Discovery was nearly

complete, and the parties were ready for trial. In contrast, the instituted CBMR

would not resolve the § 101 issue for more than a year. With trial imminent and a

decision in the CBMR a year away, a stay would only have *increased* the burden

of litigation and *delayed* resolution of the § 101 question, turning the purpose of

CBMR on its head.  CQG argues the benefit of the PTO's expertise, but § 101 is a question of law, which the district court is in a better position to evaluate.  Also, the CBMR involves only one of the patents-in-suit, and thus, trial would have proceeded irrespective of the outcome of the CBMR.  And if the claims survived review (which the district court already decided they should), CQG may not be estopped from raising the same § 101 issue at trial.  A stay would also prejudice TT because TT and CQG are direct competitors, and TT is seeking a permanent injunction, as it successfully did in a prior case involving the same patents-in-suit.  CQG improperly applies an extra-statutory "extraordinary and extremely rare" test based on legislative history, but the record satisfies even this erroneous test.  Congress intended for CBMR to be a cheap and speedy alternative to litigation, not a dilatory tactic used at the end of litigation to delay both trial and resolution of the issues raised in CBMR.

## III.   STATEMENT OF THE CASE

### A.     The Patents-in-Suit

TT owns the patents-in-suit, U.S. Patent Nos. 6,772,132 ("the '132 patent") and 6,766,304 ("the '304 patent"), which share a common specification and are directed to order-entry tools embodied in a graphical user interface ("GUI").  *See* A8-24 ('304 patent); A25-40 ('132 patent).  TT practices the patents-in-suit and

has hundreds of employees worldwide.  This Court previously affirmed a verdict of

infringement and validity of the patents-in-suit, which it described as follows:

> The patents claim software for displaying the market for
> a commodity traded in an electronic exchange.  The
> software's graphical user interface ("GUI") includes "a
> dynamic display for a plurality of bids and for a plurality
> of asks in the market for the commodity and a static
> display of prices corresponding to the plurality of bids
> and asks."  The claimed invention facilitates more
> accurate and efficient orders in this trading environment.

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1345 (Fed. Cir. 2010)

(citations omitted).

Importantly, the claims are not merely directed to trading or displaying

market information using a generic computer or display.  They are also not

directed to a mathematical algorithm, or a business method or practice.  Rather, the

claims are directed to an improvement in computer technology; that is, the

invention involves a new GUI itself, not merely displaying information on a

generic display.

In particular, the invention solves problems of prior art GUIs, in the context

of computerized trading, relating to speed, accuracy, and usability.  A33-34 (2:56-

61, 2:66-3:10).  Electronic exchanges involve rapidly moving products and prices.

A33 (2:1-2).  To profit, traders must be able to quickly react to these rapid changes

in the market.  *Id.* (2:2-10).  Some prior art GUIs, of the sort depicted in Figure 2

of the patents-in-suit, would allow a trader to place orders rapidly by clicking on a

cell that is dynamically displaying the price.  While this type of GUI worked well and became conventional, one of the inventors recognized a problem with this type of GUI.  In particular, if a trader wanted to buy or sell a commodity at a particular price, there was a risk that he would miss his desired price as a result of the price changing from under his mouse pointer at the moment in time that he clicked on the price cell on the GUI.  *Id.* (2:57-61).  If the price changes, it could cost the trader "hundreds, thousands, even millions of dollars."  *Id.* (2:60-61).

The patents-in-suit solve this GUI-centric problem with new technology—a specialized interface whereby traders may more accurately place orders at the particular price desired, which may not necessarily be the highest bid price (i.e., the price a buyer is willing to pay) or the lowest ask price (i.e., the price a seller is asking), without sacrificing speed.  A36 (7:27-29).  The invention allows traders to trade more accurately at specific prices without sacrificing speed by combining (1) keeping the prices static in position on the GUI, (2) dynamically displaying the bid and ask quantities in the market, and (3) displaying order entry locations for receiving single action order entry commands corresponding to levels of the static price axis.  *See, e.g.*, A38 (12:8-15) ("displaying market depth of the commodity, through a dynamic display of a plurality of bids and a plurality of asks in the market for the commodity, including at least a portion of the bid and ask quantities of the commodity, the dynamic display being aligned with a static display of prices

6

corresponding thereto, wherein the static display of prices does not move in response to a change in the inside market"). The invention better enables a trader to observe market trends and increases the likelihood that a trader will purchase a desired quantity at his desired price. *See, e.g.*, A35-36 (6:62-7:5, 7:17-34).

The claims do not purport to cover all types of trading screens, all forms of electronic trading, or a particular trading strategy. Moreover, the claims do not merely claim generically displaying data. Instead, they specify the particular features and functionality of this improved and more-intuitive visualization tool on a GUI. The claims require specific structural and functional features of a novel and non-obvious GUI. As a result, the claims are directed to improving the functioning of a computer, which is a technological solution to a problem that exists only in the world of conducting electronic trades using a GUI, not in the pre-electronic trading platform of open outcry systems, i.e., live trading "pits."

### B. This Case Began in 2005, When CQG Filed a Declaratory Judgment Action Seeking to Invalidate the Patents-in-Suit

CQG initiated this litigation in Colorado in 2005, when it filed a declaratory judgment action against TT, claiming that the patents-in-suit are invalid and not infringed. A100044 ¶¶ 17-18. TT then filed an infringement suit against CQG in the Northern District of Illinois. *See* A56 Dkt. No. 1. The Illinois court denied CQG's motion to dismiss the Illinois action based on CQG's gamesmanship, and the Colorado court, agreeing with the Illinois court's findings, transferred the

7

Colorado action to Illinois.  A100022, A100817, A100821 ("[CQG] requested an

extension of time for negotiation, then simultaneously terminated negotiations

prior to that date and filed a declaratory judgment action."); A100047.  TT moved

to consolidate the actions, the Illinois court dismissed the transferred action

"[p]ursuant to agreement of the parties," A100891, and CQG amended its Answer

to include its claims from the transferred action, A62-63 Dkt. Nos. 106, 112.

### C.    Discovery and Trial Are Complete

In the ten years since CQG initiated this litigation and at the time CQG filed

its motion on December 12, 2014, both parties had engaged in extensive discovery

and motions practice, with the number of docket entries reaching nearly *nine*

*hundred*.  *See* A56-144.  The parties had produced documents, deposed witnesses,

exchanged written discovery and contentions, and completed expert reports and

most expert discovery; claim construction was complete; and two of three

summary judgment motions had been decided.  A4-5.  The pretrial order, jury

instructions, exhibit lists, and witness lists were due on February 3, 2015, and trial

was scheduled to start on February 23, 2015, a date set over a year before in

December 20*13*.  *See* A104 Dkt. No. 574; A130 Dkt. No. 868.  Discovery and trial

are now complete.

The district court heard the § 101 issue at the outset of trial on February 23,

2015, and ruled that the claims of the patents-in-suit were eligible under § 101.

8

*See* A100863.  On March 16, 2015, the district court also granted judgment in TT's

favor on CQG's only other invalidity defense at trial, § 112.  *See* A200181

(2527:3-14).  On March 18, 2015, the jury returned a verdict in favor of TT and

against CQG, finding that CQG infringed the patents-in-suit, and the district court

entered judgment on the verdict.  *See* A100950; A100938.  TT's motion for a

permanent injunction is pending.  *See* A100872.  The remaining post-trial briefing

is scheduled to end by May 20, 2015.  *See* A100892.

### D.    The District Court Found That the Claims of the Patents-in-Suit Were Patent Eligible Under § 101

After full briefing and oral argument, the district court held the claims of the

patents-in-suit patent eligible under § 101.  A100863.  CQG characterizes the

invention of the '132 and '304 patents as simply implementing an abstract idea

(e.g., displaying information) on a "conventional" GUI.  Appellants' Br. 9.  The

district court, however, held that the claims were not directed to an abstract idea

because they solved a problem that existed with prior art GUIs for placing orders

on an electronic exchange.  *See* A100868 ("Rather, the claims are directed to

solving a problem that existed with prior art GUIs, namely, that the best bid and

best ask prices would change based on updates received from the market.").

Second, the court held that even if it were to find that the claims were

directed in some way to an abstract idea, the claims recite an inventive concept,

e.g., the combination of (i) dynamically displaying information relative to (ii) a

static price axis and (iii) displaying locations corresponding to the price levels of the static price axis for receiving single action order entry commands, which "allowed some traders the ability to more efficiently and accurately place trades on electronic trading systems," and "eliminated some problems of prior GUIs relating to speed, accuracy and usability." A100870-71. Accordingly, the court determined that the invention of the '132 and '304 patents was "'necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of' computers." A100871 (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)).

### E.    A Third Party Petitioned for CBMR of the Patents-in-Suit, and the PTO Denied Institution on the '304 Patent

In May 2014, a third party, TD Ameritrade, petitioned the PTO for CBMR of the patents-in-suit. A100398-99 ('132 patent); A100282-83 ('304 patent). TD Ameritrade challenged claims 1-56 of the '132 patent under §§ 101, 103, and 112, and claims 1-40 of the '304 patent under §§ 101, 102, and 103. A100399; A100283. On December 2, 2014, the PTO denied institution on all grounds for the '304 patent. A100293. The PTO denied all grounds for the '132 patent, except for § 101, and instituted review on this single ground. A100419. Notably, the PTO issued its decision to institute CBMR for the '132 patent before *DDR Holdings*, and at a time when the PTO was in flux, drafting internal guidelines on § 101. Having the benefit of further guidance from the Federal Circuit, including *DDR*

10

*Holdings*, the district court correctly found the claims are valid under § 101 because they are directed to technology embodied in a novel GUI, not a business practice. *See supra* Part III.D; *see also DDR Holdings*, 773 F.3d at 1258-59.

### F.     CQG Moved to Stay This Action Pending the Third Party's CBMR of the '132 Patent, Which the District Court Denied

On December 12, 2014, CQG moved to stay the district court proceedings pending TD Ameritrade's CBMR of the '132 patent. *See* A100004-05. In its motion, CQG argued that the CBMR may simplify issues requiring resolution by the court or jury, A100009, that "significant" expert discovery remained before trial, A100012, and that "trial will be the most time-consuming and expensive part of this case," A100013. CQG also indicated that it intended to file its own CBMR petitions. *See* A100006 n.3.

The district court denied CQG's motion based on the four stay factors under § 18(b)(1) of the Leahy-Smith America Invents Act ("AIA"). *See* A3-6. Among its reasons, the court explained: (1) only the '132 patent is subject to CBMR, and only on one issue, § 101; the court will still have to resolve all issues for the '304 patent, including § 101, and potentially all remaining issues for the '132 patent; (2) trial is in less than sixty days, pretrial dates are set, and the bulk of discovery, dispositive and *Daubert* motions, and claim construction is complete; (3) CQG provided no reason why it waited until a month before trial to seek its own CBMR, despite having since September 2012 when CBMR went into effect, showing a

11

tactical advantage and dilatory motive attributable to CQG; (4) CQG is not the petitioner of the instituted CBMR, and thus will not be estopped from asserting the same § 101 theories the PTO adjudicates during review; and (5) CQG and TT are direct competitors, causing potential prejudice to TT. *See id.*

On the same day the court denied CQG's stay motion, CQG noticed the instant interlocutory appeal and filed a motion for stay pending the appeal, which the district court denied after an oral hearing on January 14, 2015. *See* A131 Dkt. No. 886. At the hearing, the district court stated:

- Counsel for CQG: "we don't think this case is ready to be tried on the 23rd"; the court: "I work on this case every week because there's a new motion that is filed by somebody every week. . . . For the last year every week, every waking moment is [*Trading Technologies v. CQG*]. So when you say you're not ready, when you all -- we set this date and everybody agreed . . . a year ago, the Court finds it hard to believe." (A200053-54);

- Counsel for CQG: "we asked for only a limited stay of 120 days"; the court: "And once again, considering this case and the time it will take, the prep before the time, my docket -- you know, what you say is 120 days turns into more than a year. . . . [M]y schedule is now set through May of 2016." (A200061-62);

- The court: "This [trial date] has been on my docket for trial for over a year. . . . [T]his Court put aside time and again has invested a lot of time in trying to help move it along." (A200065); and

- <u>The court</u>: "[T]here should be an end, at least to my role.  And then you can take it up to where you want to take it up to.  That's what the Federal Circuit is for. . . . I want to be able to do my job and get to it without running in place expending tons of energy of everybody and not getting anywhere.  That is not justice in my estimation." (A200074-75).

At a later hearing, the district court stated:

- <u>The court</u>: "I continued [the trial] once because, oh, there's no way we can get it all done. And I continued it again. It blew my entire trial schedule up. I put it on February 23rd, which was agreed to and chosen with everybody saying, yes, that's the date. And I think I even emphasized, can we get this done? Yes. . . . December 6th, 2013 was when the date of February 23rd, 2015 was set. . . . When I came on the bench in 2010, this matter was all but supposedly ready for trial, and it was set.  And we moved it." (A200239-40).

### G.    Two Years After CBMR Became Available, One Month After CQG Filed Its Motion to Stay, and Just One Month Before Trial, CQG Sought Review of the Patents-in-Suit

On January 9, 2015, CQG filed CBMR petitions challenging the patents-in-suit.  CQG's Mot. to Stay Pending Appeal 7, Jan. 21, 2015, ECF No. 4 (hereinafter "CQG's Mot.").  CQG filed these petitions more than two years after CBMR became available, more than one year after the district court set the trial date for February 23, 2015, after its motion to stay pending the TD Ameritrade CBMR was briefed and taken under advisement by the court, and one month before trial.  *See* AIA § 18(a)(2); A104 Dkt. No. 574; A2.  CQG's petitions raise only § 101 and

13

§ 112 grounds.  A100673; A100744.  The district court denied CQG's motion for summary judgment on the same § 112 grounds in CQG's petitions, *see* A100939, and rejected CQG's § 112 challenges again at trial, *see* A200181 (2527:3-14).  The district court also decided CQG's § 101 challenge at the outset of trial, finding that this challenge also has no merit.  *See* A100863.  The PTO has not yet decided whether to institute CQG's CBMRs, and is unlikely to do so before August 2015.

## H.  CQG Moved to Stay Pending Appeal and to Expedite This Appeal, Which This Court Denied

On appeal, CQG filed a motion to stay pending appeal.  *See* CQG's Mot. 1. In support of its motion, CQG argued that "only an immediate stay [pending appeal] will preserve CQG's statutory and due process right to an immediate appeal that offers the possibility of meaningful relief," *id.* at 10, and that "[d]enying a temporary stay here will deprive CQG of those important statutory rights, [and] moot this appeal," CQG's Reply in Supp. of Mot. to Stay Pending Appeal 1, Jan. 29, 2015, ECF No. 21 (hereinafter, "CQG's Reply").  According to CQG, "[i]f this Court does not grant a stay pending appeal, . . . the trial would commence before this appeal is complete—mooting CQG's appeal."  CQG's Reply 2.  This Court denied CQG's motion.  Order, Feb. 4, 2015, ECF No. 22.

CQG also filed a motion to expedite the appeal, arguing that "[w]ithout expedited briefing, CQG would be denied its statutory right to an 'immediate'— and meaningful—appeal."  CQG's Emergency Mot. to Expedite 5-6, Feb. 4, 2015,

14

ECF No. 24 (hereinafter, "CQG's Emergency Mot. to Expedite").  The Court also

denied this motion to expedite.  Order, Feb. 6, 2015, ECF No. 28.

## IV.    SUMMARY OF ARGUMENT

This appeal should be dismissed as moot.  CQG sought a motion to stay

pending a third party's CBMR to avoid some discovery and trial.  This Court can

no longer grant any effectual relief because discovery and trial are now complete.

No burden that CQG identified in its brief would be averted by a stay at this time.

Indeed, CQG conceded that if the Court did not grant a stay pending appeal, "the

trial would commence before this appeal is completed—mooting CQG's appeal."

CQG's Reply 2.  Moreover, the district court has already decided in favor of

validity on all issues raised in the CBMRs, thus mooting any potential benefit of

the court having the PTO's opinions.

Alternatively, this Court should affirm the district court's denial of a stay.

The four statutory factors in AIA § 18(b)(1) weigh strongly against a stay.  First, a

stay pending a third-party CBMR of one of the patents-in-suit on a single ground—

§ 101—would not have simplified issues or streamlined the trial.  Even if no

claims of the '132 patent survived CBMR, the three infringement theories at trial

would be the same, and even CQG's damages expert testified that damages would

be the same.  Second, CQG filed its motion to stay *ten* years after initiating this

litigation.  Discovery was nearly complete, and trial was just two months away.

This factor alone warrants denial of a stay. Third, a stay would unduly prejudice TT because TT and CQG are direct competitors, and TT is seeking a permanent injunction. A stay would also give CQG a clear tactical advantage because CQG may not be bound by the third party's CBMR, allowing CQG an improper second bite of the apple in district court should claims survive at the PTO. Fourth, because of the late stage of litigation, a stay would not have reduced the burden of litigation. In fact, delaying trial for years—the result if CQG's motion were granted—would have only *increased* the burden because the parties would have needed to prepare for trial *again* in several years and to engage in additional discovery made necessary by the multiyear delay.

CQG filed its own CBMR petitions on the patents-in-suit, but it waited to file these petitions until two years after CBMR became available, until after it filed its motion to stay in district court, and until just one month before trial. The district court properly found that these belated filings show dilatory motive. Also, these CBMR petitions cannot support reversing the denial of a stay because the PTO has not even decided whether to institute.

CQG also improperly applies an extra-statutory "extraordinary and extremely rare" test, but even under this test, this Court should affirm the district court's decision. The district court has already ruled on the issues raised in the CBMRs, and these issues will be on appeal before this Court before the PTO issues

16

any decision, if it issues one at all. There is no deadline for filing a CBMR, and if this case warrants a stay, then any defendant could wait until the eve of trial to decide whether to proceed with trial, or to delay it by filing CBMR petitions and a stay motion. This is not what Congress intended. That CQG filed its motion to stay at the end of litigation and continues to press for a stay even after trial has resolved the issues raised in the CBMRs shows that CQG's objective is delay, not a cheap and speedy alternative to litigation as Congress intended.

## V.    ARGUMENT

### A.    Standard of Review

Before the AIA, this Court reviewed decisions on motions to stay pending PTO proceedings under the abuse of discretion standard. *See Benefit Funding Sys. LLC v. Advance Am. Cash Advance Ctrs. Inc.*, 767 F.3d 1383, 1385 (Fed. Cir. 2014). The AIA, however, provides that this Court "shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo." AIA § 18(b)(2). CQG asserts that the abuse of discretion standard is incompatible with the AIA, Appellants' Br. 21, but the AIA provides that the Court "may" apply the de novo standard "to ensure consistent application of established precedent," AIA §18(b)(2). Thus, while the Court *may* apply the de novo standard to "prevent the affirmance of opposite decisions on identical facts from different judicial districts," *United States v. Arvizu*, 534 U.S.

17

266, 275 (2002), the Court should still apply the abuse of discretion standard to findings on what those facts are. The Court need not resolve this issue here, however, because the denial of a stay was proper under any standard of review.

### B.     This Appeal Should Be Dismissed as Moot

The Court should dismiss this appeal because the trial in the underlying proceedings is complete, mooting the relief that CQG requested. "It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology*, 506 U.S. at 12 (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). Accordingly, "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Id.* (quoting *Mills*, 159 U.S. at 653).

The mootness question turns on the relief the appellant requested. *See Nat'l Football League Players Ass'n v. Pro Football, Inc.*, 56 F.3d 1525, 1528 (D.C. Cir. 1995), *vacated in part on reh'g*, 79 F.3d 1215 (D.C. Cir. 1996). Here, CQG requested a stay pending CBMR to avoid further discovery and trial. *See* A100003; A100016 ("The parties should not need to spend significant resources in finishing expert discovery and preparing for trial . . . ."); Appellants' Br. 24 ("A stay would clearly simplify the issues in question and streamline the trial."), 33-34

18

("the amount of discovery remaining at the time CQG filed its motion was substantial"; "there remains substantial pretrial and trial work").  Because CQG filed its motion ten years into the litigation and just two months before trial, however, discovery and trial ended before CQG's appeal could be fully briefed.

Due to these intervening events, it is now impossible for a court to grant the relief CQG requested.  The discovery, pretrial, and trial proceedings that CQG sought to avoid are complete, and thus, no burden that CQG identifies would be averted by a stay at this time.  Accordingly, there is no effectual relief that the Court can provide, and the appeal is moot.  *See Nat'l Football League*, 56 F.3d at 1529 (finding appeal is moot where appellant sought affirmance of an order suspending players from playing during the season, and the final game of the season ended); *cf. Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 851 (Fed. Cir. 1987) ("[T]he harm caused by an order which is deemed to deny a preliminary injunction cannot *effectually* be reviewed after the trial.  By that time the question of relief or of maintaining the *status quo during* trial will have become moot.").  Moreover, the district court has already ruled on all the issues—§§ 101 and 112—raised in the third party's CBMR and CQG's CBMR petitions.  *See* A100863; A200181 (2527:3-14).

Indeed, in briefing earlier motions, CQG conceded that, after trial began, there would be no possibility of meaningful relief and the appeal would be moot.

19

*See, e.g.*, CQG's Mot. 10 ("[O]nly an immediate stay [pending appeal] will preserve CQG's statutory and due process right to an immediate appeal that offers the possibility of meaningful relief."); CQG's Reply 1 ("Denying a temporary stay here will deprive CQG of those important statutory rights, *moot this appeal*, and frustrate Congress' intent . . . .") (emphasis added), 2 ("If this Court does not grant a stay pending appeal, . . . the trial would commence before this appeal is completed—*mooting CQG's appeal* . . . . TT simply ignores that denying CQG a stay [pending appeal] will moot CQG's appeal . . . .") (emphasis added), 10 ("[T]he denial of a stay pending appeal would, as a practical matter, *moot CQG's challenge* to the district court's denial of a stay . . . .") (emphasis added); CQG's Emergency Mot. to Expedite 5-6 ("[A]n expedited briefing schedule is essential to avoid extinguishing CQG's appellate rights. . . . Without expedited briefing, CQG would be denied its statutory right to an 'immediate'—and *meaningful*—appeal of the district court's order denying a stay pending CBM review.") (emphasis added); CQG's Reply in Supp. of Emergency Mot. to Expedite 1, Feb. 6, 2015, ECF No. 27 ("[I]t is undisputed that expediting this appeal is the only way to ensure that the important statutory rights conferred by the AIA are given full effect."), 4 ("It is undeniable that expedited consideration of this appeal is necessary to ensure that CQG's appellate rights are fully protected, . . . .").

### C.    Alternatively, the District Court's Denial of the Requested Stay Should Be Affirmed

The AIA governs stays pending CBMR, and identifies four requisite factors: "(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial; (B) whether discovery is complete and whether a trial date has been set; (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court."  AIA § 18(b)(1).  The stay applicant has the burden to show a stay is warranted, *Nken v. Holder*, 556 U.S. 418, 433-34 (2009), and CQG has failed to show that these factors weigh in favor of a stay.

### 1.    A stay pending a third-party CBMR of the '132 patent would not have substantially simplified issues or streamlined the trial.

Considering first whether a stay pending TD Ameritrade's CBMR of the '132 patent would have simplified issues or streamlined the trial, the district court correctly decided that this factor weighs against a stay.  A3-4.  This factor weighs strongest in favor of a stay when CBMR could dispose of the entire litigation. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014) (finding it "significant that the PTAB [Patent Trial and Appeal Board] granted CBMR on *all* asserted claims of the *sole* asserted patent").  Here, the PTO only

instituted CBMR on a single ground for one of the two patents-in-suit. *See* A100399; A100283.

As the district court explained, the '304 patent is not implicated in the CBMR of the '132 patent. A4. Thus, no matter the outcome of the '132 CBMR at the PTO, the district court would have had to resolve all claims and defenses relating to the '304 patent. *Id.*; *see Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, No. 12-cv-2730 ADM/AJB, 2013 WL 4483355, at *2-3 (D. Minn. Aug. 20, 2013) (denying stay pending inter partes review ("IPR") where defendant sought IPRs for only two of three patents-in-suit, all of which relate to electric-powered vehicles); *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2014 WL 533494, at *4 (S.D. Ohio Feb. 11, 2014) (denying stay where "16 asserted claims are *not* at issue in any IPR").

Should claims of the '132 patent survive review,[1] the district court would still have had to decide CQG's arguments related to that patent. A3-4. Because CQG is not the petitioner in the instituted CBMR, the AIA may not estop CQG from raising in district court the same § 101 patent-eligibility issue the PTO adjudicates in the CBMR. *See* AIA § 18(a)(1)(D); *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *4 (E.D. Tex.

---

[1] The district court has already ruled that the claims should survive any review, and the § 101 question will likely be before this Court on appeal before the PTO decides the question—if in fact the PTO ever decides the question.

Mar. 11, 2015) (finding simplification argument stronger when defendants are subject to estoppel in IPR); *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, No. 13-CV-02218-JST, 2013 WL 6021324, at *3 (N.D. Cal. Nov. 13, 2013) (observing that "*ex parte* reexamination was less likely to simplify the case" because it lacks estoppel benefits).

Nor did CQG agree to be bound by the PTO's decision in the instituted CBMR. *See VirtualAgility*, 759 F.3d at 1311 n.2 (indicating important that nonpetitioner defendants agreed to estoppel pending CBMR); *Trover*, 2015 WL 1069179, at *4 n.1 (recognizing that nonpetitioner defendants agreed to be bound by IPR decision). And even if CQG were estopped on the § 101 issue, the district court would still have had to decide the remaining issues on infringement, invalidity, and damages. *See Procter & Gamble*, 2014 WL 533494, at *4 (denying stay where "the IPR will have no effect on a significant portion of the case" because sixteen asserted claims were unchallenged in IPR).

CQG argues that the district court erred in thinking it would have to decide the remaining invalidity issues on the '132 patent even if the PTO found the patent unpatentable under § 101. Appellants' Br. 29. This argument misreads the court's opinion. The district court acknowledged that "'if claimed subject matter does not fall within the ambit of *section 101*, any determination on validity or infringement constitutes an impermissible advisory opinion.'" A3 (quoting *Ultramerical, Inc. v.*

23

*Hulu, LLC*, 772 F.3d 709, 718 (Fed. Cir. 2014) (Mayer, J., concurring)).  By

stating that "there are other issues relating to the '132 patent that the Court would

still have to resolve," the court was merely recognizing that the CBMR proceeding

will address only § 101, and all other invalidity issues would have to be decided if

the PTO concluded that any claims of the patent satisfied § 101.  *See* A3-4.

CQG urges that a stay could "simplify a trial here by cutting its scope *in*

*half*."  Appellants' Br. 24-25.  The '304 and '132 patents, however, share a

common specification, and according to CQG, there are "strong similarities"

between the claims.  *Id.* at 26.  As a result, removing the '132 patent would be—at

most—akin to simply reducing the number of asserted claims.  CQG has not

identified any accused products that would escape infringement by removing the

'132 patent from trial.  Indeed, CQG's own expert testified that damages would be

the same, even if only one claim of the two patents-in-suit was infringed.  *See*

A200117 (2107:1-3) ("Q[:] And your opinion on damages here applies no matter

whether the jury finds one claim to infringe or all claims to infringe? A[:] I think

that's correct.").  In other words, the district court would still have had to (and did)

resolve infringement, invalidity, and damages, none of which the PTO will address

beyond the § 101 question for the '132 patent.  Thus, removing the '132 patent

from trial would *not* have substantially simplified the proceedings.  Indeed, CQG

trumpets "three different theories of infringement," "400 versions of software,"

and "135 potential fact witnesses and nine expert witnesses," but CQG failed to identify a single theory or number that would have been simplified, removed, or reduced at trial by removing the '132 patent.  *See* Appellants' Br. 26.[2]

In addition, CQG declares that the district court's decision on this factor is "directly contradicted by this Court's precedents," *id.* at 25, citing only *Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368 (Fed. Cir. 2014), a decision this Court vacated, *see* No. 2014-1468, 2015 WL 981523, at *2 (Fed. Cir. Feb. 27, 2015).  Moreover, *Versata* is distinguishable from this case with respect to the first stay factor.[3]  First, the PTAB instituted CBMRs on all patents-in-suit, and indeed, "*every* claim of each of Versata's asserted patents."  771 F.3d at 1372.  In contrast, here the PTAB instituted on only one of the two patents-in-suit.  *See* A100399; A100282.  Second, the defendant in *Versata* was subject to estoppel as the CBMR petitioner, *see* 771 F.3d at 1370, but here, CQG may not be estopped based on a third party's CBMR, *see* AIA § 18(a)(1)(D).

Moreover, while recognizing that "there can still be a simplification of the issues when only some, but not all, of the claims asserted in litigation are

---

[2] Now that trial has ended without having included the presentation of 400 versions of software or 135 witnesses, CQG's prediction is proved an exaggeration.  The parties agreed to using the independent claims as representative claims, A200182-83 (2531:22-2533:7), and the trial focused on only two different products, one with only three alleged infringing modes and the other with only one alleged infringing mode.

[3] *Versata* is also distinguishable based on the other stay factors, as explained below.

challenged in a CBM review," *Versata*, 771 F.3d at 1372, the Court further explained:

> This is not to say, however, that the grant of a CBM petition on a subset of asserted claims automatically simplifies the issues. By its very nature, the CBM process will always simplify some issues.

*Id.* at 1372 n.3. By failing to make a specific showing of how the trial would have been simplified by the CBMR process, CQG takes the apparent position that any amount of potential simplification is sufficient, in which case this factor would *always* favor a stay. This position cannot be correct. *See id.* The *Versata* Court instructed that "a proper simplification analysis would look to what would be resolved by CBM review versus what would remain," *id.* at 1372, which is the analysis the district court correctly applied, *see* A3-4.

CQG urges consideration of its own CBMR petitions based on *Versata*, Appellants' Br. 28-29, but CQG filed these petitions *after* it filed its motion to stay, *after* briefing on the motion was complete, *after* the district court took CQG's motion under advisement, and just *one month* before trial, A2.[4] The PTO will most likely not decide on institution of CQG's petitions until August 2015, and unlike in *Versata*, there will be no district court proceedings left by then to

---

[4] Moreover, this Court has jurisdiction to review the denial of motions to stay based only on instituted CBMR petitions under AIA § 18(b)(2), not CQG's noninstituted CBMR petitions. *See Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, No. 2014-1724, slip op. at 13 (Fed. Cir. Apr. 1, 2015).

simplify or streamline.  The PTO is unlikely to institute in any event because CQG

filed a declaratory judgment action, which bars the petition.  *See* 35 U.S.C.

§ 325(a)(1) ("A post-grant review may not be instituted under this chapter if,

before the date on which the petition for such a review is filed, the

petitioner . . . filed a civil action challenging the validity of a claim of the patent.");

AIA § 18(a)(1)(D).[5]

### 2.    At the time of CQG's motion, discovery was nearly complete, and trial was imminent.

The district court also correctly decided that the next factor—whether

discovery is complete and whether a trial date has been set—weighs strongly

against a stay.  A4-5.  CQG filed its declaratory judgment complaint nearly ten

years ago.  *See* A100022.  Document production, written discovery and

contentions, claim construction, summary judgment motions, and *Daubert* motions

were complete before CQG filed its motion to stay, as well as most expert

discovery and depositions, and the trial date was set for February 23, 2015, just

---

[5] CQG argues there is no bar because the court dismissed the transferred declaratory judgment action, but that is not the case here where the transferred action was dismissed pursuant to an agreement of the parties that CQG would amend its Answer in this action to include the transferred claims.  *See Apple Inc. v. Rensselaer Polytechnic Inst. & Dynamic Advances, LLC*, IPR2014-00319, Paper 12, Decision at 4-7 (PTAB June 12, 2014) (citing *Brennan v. Kulick*, 407 F.3d 603, 607 (3d Cir. 2005)).  The PTAB has held that if an action is dismissed without prejudice but the claims of that action are consolidated with another case, that action "cannot be treated as if it never existed."  *Id.* at 7.

two months after CQG filed its motion. *See* CQG's Mot. 15-16; A4-5. This factor alone warranted denial of CQG's motion.

"Precedent illustrates the reluctance of district courts to stay litigation that is well advanced." *VirtualAgility*, 759 F.3d at 1324 (Newman, J., dissenting). In *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783 (D. Del. 2011), the court found that "[t]he status of the litigation clearly cuts against a stay" where discovery was complete and trial was a month away, *id.* at 788. Another court observed that, "when confronted with a motion to stay in the later stages of a case, the [c]ourt and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013) (alteration in original) (internal quotation marks omitted) (finding that this factor weighs strongly in favor where the action was "still at the earliest possible stage"; "No conferences with the [c]ourt have occurred; no schedules have been set; no substantive motions have been filed; and the [c]ourt has issued no substantive rulings.") (alterations in original).

Courts consistently find that this factor weighs strongly against a stay when the stay request is filed at the stage of litigation when CQG filed its motion, and indeed, even at far earlier stages. *See, e.g.*, *Invensys Sys., Inc. v. Emerson Elec.*

28

*Co.*, No. 6:12-cv-799, 2014 WL 4477393, at *3-4 (E.D. Tex. July 25, 2014)

(denying stay pending IPR with discovery closed and trial set in twenty months);

*Walker Digital, LLC v. Google, Inc.*, No. 11-318-LPS, 2014 WL 2880474, at *1

(D. Del. June 24, 2014) (denying stay pending CBMR where parties litigated for

three years, and discovery and claim construction were complete); *SecureBuy, LLC

v. Cardinal Commerce Corp.*, No. 13-1792-LPS, 2014 WL 1217723, at *1 (D. Del.

Mar. 21, 2014) (denying stay; "discovery is underway and trial is set for less than

five months from now"); *Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns

AB*, No. 6:12cv224 JDL, 2014 WL 4494479, at *3 (E.D. Tex. Jan. 14, 2014)

(denying stay where trial was set thirteen months from date of motion); *Oracle

Corp. v. Parallel Networks, LLP*, No. 06-414-SLR, 2010 WL 3613851, at *2 (D.

Del. Sept. 8, 2010) (denying stay where motion filed "years into the . . . litigation,"

after fact and expert discovery, claim construction, and summary judgment);

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63-SLR, 2010 WL

3522327, at *2 (D. Del. Sept. 2, 2010) (denying stay where discovery was

complete and trial was scheduled within weeks of motion).

    CQG conceded that the case was at an "advanced stage," A100011, but

argues that "the district court improperly premised its analysis on what discovery

the parties had already completed, rather than what work was outstanding,"

Appellants' Br. 31.  CQG misstates the law by quoting a statement in *Versata*—

"'[t]he correct test is one that focuses *prospectively* on the impact of the stay'"—which applies to the *fourth* stay factor concerning the burden of litigation, not the *second* factor. *Id.* (alteration in original) (quoting *Versata*, 771 F.3d at 1375). CQG also makes a distinction without a difference. The "advanced stage" of this litigation means that most of the litigation burden has passed, and the prospective burden of discovery and trial—at least with respect to the '304 patent—would have occurred with or without a stay pending the '132 CBMR. In addition, the district court properly considered the remaining discovery, including rebuttal expert discovery, "the final pretrial order, motions *in limine*, and any depositions that the parties have not had the opportunity to conduct," and correctly concluded that "the bulk of discovery, dispositive motions, *Daubert* motions, and claim construction" was complete. A4-5.

CQG also argues that the court improperly focused on "the state of litigation at the time it resolved CQG's motion, rather than at the time CQG filed it." Appellants' Br. 32. This ignores that the district court decided CQG's motion just weeks after CQG filed it, meaning that "the stage of litigation [at the time of the decision] was effectively the stage of the filing of the motion." *VirtualAgility*, 759 F.3d at 1316. Regardless, the district court did consider the stage of litigation at

the time CQG filed it. *See, e.g.*, A4 (stating that "the case is set for trial in fewer

than 60 days (*73 days from filing of the motion to stay*)") (emphasis added).[6]

Despite the statutory mandate to consider "whether a trial date has been set,"

CQG deems the issue irrelevant. Appellants' Br. 34-35. CQG cites two examples

of this factor weighing in favor of a stay where a trial date had been set, but in

those cases, trial was scheduled for twenty-six and eleven months from the filing

of the stay motion. *See Versata*, 771 F.3d at 1370 (twenty-six months); *Zillow,*

*Inc. v. Trulia, Inc.*, No. C12-1549JLR, 2013 WL 5530573, at *3, *5 (W.D. Wash.

Oct. 7, 2013) (eleven months). Here, CQG moved to stay a trial that was only two

months away. CQG also complains of the "significant work remaining to be done

before, during, and after any prospective trial," Appellants' Br. 36, but this

standard is inconsistent with the statutory language. *See* AIA § 18(b)(1)(B). The

work CQG identifies is typical of every patent litigation leading up to trial. *See*

A4-5 ("what remains is what always remains 60 days from trial"). If CQG's

"significant work" standard applied, this factor would always support a stay before

---

[6] At most, the district court simply took judicial notice of intervening events during
the few weeks between CQG's motion and the court's decision, such as finalizing
a summary judgment opinion, which this Court has considered proper. *See*
*Intellectual Ventures II*, slip op. at 8 n.6 ("While, as noted, no CBMR petitions
were pending as of the filing of the motion to stay, it is permissible for the district
court to consider the circumstances that exist as of the court's ruling on the motion
before it."); *VirtualAgility*, 759 F.3d at 1317 n.6. Even if this Court disregards
these events, this factor still weighs strongly against a stay.

31

trial, whether two months or two weeks, because trials (including inevitable last-minute discovery) by their nature require "significant work."

### 3.    A stay would unduly prejudice TT and award CQG a clear tactical advantage.

As for the third factor concerning undue prejudice to the nonmoving party or clear tactical advantage for the moving party, the district court correctly decided that this factor also weighs against a stay. A5-6. CQG argues that the district court's language was "equivocal," Appellants' Br. 41, but this puts form over substance. The record supports the district court's decision.

CQG does not dispute that TT and CQG are direct competitors, and courts routinely find that competition disfavors a stay. A6; *VirtualAgility*, 759 F.3d at 1318 ("[C]ompetition between parties can weigh in favor of finding undue prejudice."); *Segin Sys., Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 483-84 (E.D. Va. 2014) (finding that "a delay in the resolution of Plaintiffs' claims poses a substantial risk of undue prejudice," where plaintiffs and defendants are direct competitors); *Market-Alerts*, 922 F. Supp. 2d at 495 ("[C]ourts are generally reluctant to stay proceedings where the parties are direct competitors.") (internal quotation marks omitted); *ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011) ("This prejudice is heightened when parties to litigation are direct competitors; in such cases, courts presume that a stay will prejudice the non-movant.").

32

Although CQG states that the district court "fail[ed] to identify any factual basis for its conclusion that TT would be unduly prejudiced," Appellants' Br. 38, the court expressly noted that "the parties are direct competitors," A6. CQG also admonishes the district court for "failing to make adequate factual findings," citing *Versata*. Appellants' Br. 38. But *Versata* simply states that the district court correctly relied on "an improper tactical advantage" rather than competition in finding that the third factor weighs against a stay. *See Versata*, 771 F.3d at 1374 ("On this factor, the district court made no factual findings that Versata would suffer undue prejudice as a result of a stay. Instead, the court determined that Callidus held an improper tactical advantage over Versata . . . .") (footnote omitted). While there was no allegation of competition in *Versata*, the district court here found that TT and CQG are direct competitors, which is undisputed. As such, the court's finding of undue prejudice is amply supported. *See, e.g.*, *Audatex N. Am. Inc. v. Mitchell Int'l Inc.*, No. 13-CV-1523-BEN (BLM), 2014 WL 4546796, at *6 (S.D. Cal. Sept. 12, 2014) ("Although Plaintiff has not provided detailed projections regarding market share and possible losses, Defendant has conceded that Plaintiff is a competitor, and common sense indicates that a patentee would be harmed if a competitor were permitted to continue to sell the allegedly infringing product."); *see also Segin*, 30 F. Supp. 3d at 483-84.

CQG further dismisses any prejudice by distorting the record on the two prior stays in this case. Appellants' Br. 37-38. TT filed multiple litigations on the patents-in-suit, and the district court ordered the parties in the various litigations, including CQG, to coordinate with the lead litigation, *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04-cv-5312 (N.D. Ill.), on common issues such as invalidity. A100826. Thus, the first stay was limited to non-common issues, and at the court's order. TT neither proposed nor favored this stay. The second stay was during the appeal of *eSpeed*. A jury in *eSpeed* found that certain products infringed and others did not, and CQG represented to TT and the district court that its products operated in the noninfringing way. Because the court had stayed discovery on infringement, TT had no discovery on CQG's products and had to rely on CQG's representations about the operation of its products. Accordingly, based on CQG's representations, TT agreed to a further stay. A100829. After the appeal, CQG conceded that these representations were inaccurate. A100835. TT would have never agreed to such a stay if CQG had provided accurate information about the products, and TT has already been irreparably harmed by that stay, with loss of evidence. CQG misleads this Court by falsely suggesting that TT sought prior stays and arguing that those stays are indicative of no prejudice to TT, and it is improper for CQG to use its ill-gotten stay offensively to seek yet another stay in the case.

34

CQG argues that the district court erred in its undue prejudice analysis by giving no weight to TT's decision not to seek a preliminary injunction and TT's licensing the patent rights. Appellants' Br. 38-40. CQG, however, failed to raise either of these arguments below, *see* A100012-13, and thus, the Court should disregard them. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("[A]ppellate courts do not consider a party's new theories, lodged first on appeal. If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court."). CQG did not raise licensing at all, and the only mention of "preliminary injunction" in CQG's trial brief is in a parenthetical to a case citation addressing dilatory motive, not prejudice. A100012-13.[7] In addition, TT sought a preliminary injunction in the lead litigation on the patents-in-suit, *eSpeed*, which the district court denied. *See* A100969. It made no sense for TT to pursue a preliminary injunction in related cases after the court denied TT's motion in *eSpeed* and after the court ordered a stay in all related cases, including the instant litigation, on non-common issues, *see* A100826. Thus, the Court should not fault TT for making this decision. *See VirtualAgility*, 759 F.3d at 1318-19 (acknowledging that "there could be a variety of reasons that a patentee does not move for a preliminary injunction"); *Audatex*,

---

[7] CQG attempted to raise the preliminary injunction issue in a reply brief. *See* A100310. Because the Court's briefing schedule did not permit a reply and CQG did not move for leave to file one, the district court struck CQG's reply brief. *See* A100663.

2014 WL 4546796, at *7 (explaining that "there are numerous possibilities" for why plaintiff did not pursue injunctive relief and court "will not place great weight upon a decision not to reveal litigation strategy"); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *3 (N.D. Cal. Jan. 13, 2014) ("[A] party may decide to forego seeking a preliminary injunction for a variety of reasons having nothing to do with its view of the merits.") (internal quotation marks omitted); *Biomet Biologics, LLC v. Bio Rich Med., Inc.*, No. SACV 10-1582 DOC (PJWx), 2011 WL 4448972, at *2 (C.D. Cal. Sept. 26, 2011) ("[T]his Court will not hold against Plaintiffs their decision not to pursue a preliminary injunction."); *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *6 (N.D. Cal. July 28, 2011) (holding undue prejudice factor weighed against a stay even though no preliminary injunction sought because of "difficulty of showing a likelihood of success on the merits while its patents are in reexamination"). CQG also ignores that TT is seeking a *permanent* injunction—just as it successfully did in *eSpeed* on the same patents-in-suit. A100872; A100970.

CQG also suggests that any damages may be compensated monetarily, *see* Appellants' Br. 39, but the longer CQG "is allowed to engage in allegedly infringing activity, the lower the value of the patents becomes as licensing assets," *Walker Digital*, 2014 WL 2880474, at *1; *see also Davol, Inc. v. Atrium Med.*

*Corp.*, No. 12-958-GMS, 2013 WL 3013343, at *4-5 (D. Del. June 17, 2013) (finding undue prejudice weighs against a stay when parties were direct competitors even though patent owner had licensing activity and did not seek preliminary injunction).

Even if there were no prejudice from competition in this case, this factor would still weigh against a stay based on a clear tactical advantage and dilatory motive. *See Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13CV213-JRG-RSP, 2015 WL 627887, at *2 (E.D. Tex. Jan. 29, 2015) (denying stay even though patent owner was nonpracticing entity and not in competition with accused infringer because it would be "prejudiced by a substantial delay of an imminent trial date"); *Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 1:13-CV-0633 (DEP), 2014 WL 201965, at *5-6 (N.D.N.Y. Jan. 15, 2014) (even though parties were not competitors, finding this factor weighs against a stay because timing of filing IPRs suggested tactical advantage); *ESN, LLC v. Cisco Sys., Inc.*, No. 5:08-CV-20, 2008 WL 6722763, at *2-3 (E.D. Tex. Nov. 20, 2008) (finding patent owner would be "significantly prejudiced and suffer tactical disadvantages" by a stay even though not in competition with accused infringer).

Furthermore, a stay pending TD Ameritrade's CBMR of the '132 patent would give an unfair advantage to CQG because CQG has not agreed to be bound by that review. *See Segin*, 30 F. Supp. 3d at 484 ("That Defendants may have two

37

separate opportunities in two separate forums to challenge the validity of Plaintiffs'

patent does raise a concern of an unfair tactical advantage . . . ."). Should TT

prevail in the '132 CBMR, CQG may seek to relitigate the same § 101 issue for the

'132 patent in district court after the stay is lifted, allowing CQG an improper

second bite of the apple. *Id.* (observing that two opportunities in two forums gives

defendant "two bites of the apple as to a central defense"). CQG argues that it will

be estopped based on its own belated CBMR petitions, but these petitions—filed

after its motion to stay and just one month before trial—simply show an attempt at

a *third* bite of the apple on the very same issue. Moreover, the PTO has not

instituted CQG's petitions, and this Court lacks jurisdiction to review a district

court's denial of a motion to stay based on noninstituted CBMR petitions. *See*

*Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, No. 2014-1724, slip op.

at 15 (Fed. Cir. Apr. 1, 2015).

The district court also correctly found dilatory motive in CQG's waiting

until a month before trial to file its CBMR petitions, as CQG gave no reason for its

delay. A5; *see Trover*, 2015 WL 1069179, at *3 (denying stay when defendants

waited almost one year after the complaints were filed to seek IPR review, filing

petition just five days shy of the one-year bar for IPRs); *Boston Scientific*, 777

F. Supp. 2d at 789 (denying stay where defendant delayed for years in requesting

reexamination); *Belden Techs.*, 2010 WL 3522327, at *2 (motion to stay filed

eleven days before trial gave rise to inference that moving party sought inappropriate tactical advantage); *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ. A. 01-557JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003) (motion to stay filed weeks before trial supported inference of prejudice). Although CBMR was available in September 2012 and this case had been pending since 2005, CQG waited two-and-a-half years until January 2015 to file its petitions. *See* AIA § 18(a)(2). CQG tried to excuse its delay based on not wanting to "further burden the PTO." CQG's Mot. 17. This is not a valid excuse, and CQG's purported magnanimity does not explain why CQG did not file its petitions between September 2012 and when TD Ameritrade filed its petitions in May 2014.

At this point, the only true purpose behind CQG's motion to stay is to delay the resolution of this matter. That CQG continues its pursuit of a stay *after* trial confirms this motive. Congress intended CBMR to be a "cheap and speedy alternative to litigation." 157 Cong. Rec. E1183 (daily ed. June 23, 2011) (statement of Rep. Smith). By belatedly seeking CBMR one month before trial, CQG made CBMR neither an alternative to litigation—the litigation is complete— nor "cheap and speedy." At the time CQG filed its motion to stay, the district court was only two months from deciding the issue raised in the third party's '132 CBMR, and at the time CQG filed its own CBMR petitions, the court was only one month from deciding the issues in those petitions. Indeed, the court ruled on § 101

39

within weeks of the petitions, showing that the fastest route to resolution was the district court, not waiting more than one year for the PTO to decide.[8]  Through its motion to stay, CQG attempted to avoid imminent resolution of these issues at the district court in favor of a multiyear process at the PTO, which neither the statutory factors nor the legislative history supports.

### 4.    A stay would not have reduced the burden of litigation.

The district court decided that the fourth factor—whether a stay will reduce the burden of litigation on the parties and on the court—is neutral.  A6.  To the extent the court erred, it is only because this factor also weighs against a stay for at least the reasons discussed above with respect to the first factor.  *See supra* Part V.C.1.  Because TD Ameritrade's CBMR only addresses the '132 patent, this case would have gone to trial on at least the '304 patent irrespective of the outcome of the '132 CBMR.  A stay would have merely delayed trial, not eliminated it, and even if claims of the '132 patent were cancelled, the effect on trial would have been marginal at best given that the patents are related, and the district court had to resolve infringement, invalidity, and damages on the '304 patent.

When CQG filed its motion, the parties and the court had already experienced most of the burden that a stay pending CBMR was intended to avoid, and were prepared and ready for trial.  Indeed, the statute requires consideration of

---

[8] The court also rejected the identical § 112 defense that CQG raised in its noninstituted CBMR petitions.  *See* A200181 (2527:3-14).

the burden of *litigation*, not merely the burden of *trial*. *See* AIA § 18(b)(1)(D). CQG again asserts that "CBM review will cut this litigation in half," but again fails to show how. Appellants' Br. 46. In fact, delaying trial, which is all that a stay would have accomplished, would have only *added* burden by extending the litigation for two years or more. *See Invensys*, 2014 WL 4477393, at *3 ("Firm trial settings resolve cases and reduce litigation costs."). And at this stage, this factor must weigh against a stay because trial is complete.

The instituted CBMR will take a year for the PTO to decide, the appeal will take longer, and once a stay is lifted, the district court would have required a year or more to schedule trial. *See* A200062-63; A200239-40. The parties and the court would have required more time and expense to prepare *again* for trial in several years, and may have required further discovery, including supplemental production, interrogatory responses, expert reports, and depositions. The district court was ready to decide the § 101 issue for both patents, and did so on February 24, 2015, *see* A100863, on a briefing schedule and format for argument that CQG's counsel proposed, *see* A200222-25. Whether the § 101 issue was heard by the district court or the PTO, it will be appealed either way to this Court. Judicial efficiency counsels in favor of denying a stay and allowing the parties to appeal from the district court's judgment, rather than staying the case and waiting more than a year for the CBMR proceedings to reach this Court.

41

CQG argues that a stay would afford the district court the benefit of the PTO's expertise on the question of the patents' validity. Appellants' Br. 47. This argument is moot because the district court has already decided validity, and the § 101 question will likely reach this Court on appeal before the PTO decides it. In addition, a district court does not need the PTO's expertise on § 101, which, unlike invalidity based on a prior art analysis, is a question of law. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012). The district court and this Court are in the best position to evaluate questions of law.

CQG also quotes from the legislative history that "'[CBMR] should be used *instead of, rather than in addition to, civil litigation*.'" Appellants' Br. 47 (quoting 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer)). This history, however, shows why the district court's decision to deny a stay should be granted. CBMR was intended to be used as a faster alternative to litigation, and not as a tactical advantage to delay resolution of an issue and to avoid trial *after* the litigation has already run its course, as CQG attempted to do here.

Moreover, the primary purpose of CBMR was to allow the PTO a more thorough review of the prior art. *See* 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) (discussing "lack of readily accessible prior art references" at the time and ability to obtain patents "without a rigorous and thorough review in the Patent Office"). That is not an issue here where the

42

pending CBMRs do not involve any prior art challenges, and where the novelty

and nonobviousness of the patents-in-suit have been confirmed multiple times, in a

rigorous original examination at the PTO, in an ex parte reexamination of each

patent, and *two* trials to verdict.  A100953; A100960; A100957; A100950.

> **D.    CQG Imposes an "Extraordinary and Extremely Rare" Test Not Found in the Statute, but Even Under This Extra-Statutory Test, the District Court's Decision Should Be Affirmed**

In addition to the statutory four-factor test, CQG injects another factor into

the analysis: whether this case is one of the "extraordinary and extremely rare set

of circumstances" where a stay is unwarranted.  Appellants' Br. 48.  CQG

improperly imports this fifth factor from legislative history, not the statute itself.

*See Chamber of Commerce of United States v. Whiting*, 131 S. Ct. 1968, 1980

(2011) ("Congress's authoritative statement is the statutory text, not the legislative

history.") (internal quotation marks omitted); *Gilead Scis., Inc. v. Lee*, 778 F.3d

1341, 1348 (Fed. Cir. 2015) (declining to rely on legislative history for

unambiguous language because "[e]xtrinsic materials have a role in statutory

interpretation only to the extent they shed a reliable light on the enacting

Legislature's understanding of otherwise ambiguous terms") (alteration in original)

(internal quotation marks omitted).

But even if there were such a factor, this case represents such

"extraordinary" and "rare" circumstances that warrant denial of a stay.  CQG

admits that Congress intended for CBMR to "'be used instead of, rather than in addition to, civil litigation.'"  Appellants' Br. 49 (quoting 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer)).  After ten years of litigation, a stay just two months before trial in favor of an additional multiyear CBMR process would not make CBMR an alternative to litigation; rather, it would make CBMR an appendage to the litigation and delay resolution of the raised issues.  CQG has not identified a single case where a court has granted a stay pending a PTO proceeding at a similar stage in the litigation, and yet courts have routinely denied stays at even earlier stages based on the "late" stage of the litigation.  *See supra* Part V.C.2.  This case is precisely the "unprecedented or extreme" circumstance, as CQG calls it, Appellants' Br. 48, that warrants denial of a stay.

Notably, Congress expressly included the timing, prejudice, and tactical advantage factors in the statute.  *See* AIA § 18(b)(1)(B)-(C).  Had Congress wanted to enact CQG's position, it could have elected to omit these factors to require stays regardless of when the motion is filed, how far the case has progressed, whether the parties are direct competitors, whether a stay presents a clear tactical advantage to the movant, or whether the movant has a dilatory motive.  *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("The language of the statute is clear, and we have historically assumed that Congress intended what it enacted."); *Gilead*, 778 F.3d at 1349 (rejecting attempt to read language into statute).  It did not.  Moreover, the

statute also offers interlocutory appeal to the patent owner if the district court improperly *grants* a motion to stay and delays the court's proceedings in favor of the PTO's CBMR. *See* AIA § 18(b)(2) ("A party may take an immediate interlocutory appeal from a district court's decision . . . ."). This remedy to patent owners shows that the legislative purpose of this statute was to favor the forum that provides the speediest resolution, which, here, is the district court.

While CQG leans heavily on "'congressional policy strongly favoring stays,'" Appellants' Br. 48 (quoting 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer)), Congress's inclusion of all four statutory factors and immediate relief to the patent owner for grants of stays leaves no doubt: Congress disfavored staying cases on the eve of trial, particularly where the parties are direct competitors and the movant seeks a stay for the purpose of tactical advantage and delay, as in this case. To decide otherwise would inappropriately encourage CBMR petitioners to wait until trial is imminent, to gauge whether the litigation is proceeding favorably, before deciding whether to file their petitions and seek a stay.

## VI.  CONCLUSION

For the reasons above, TT respectfully requests that the Court either dismiss CQG's appeal as moot or affirm the district court's decision to deny a stay.

April 3, 2015

Respectfully submitted,

_____/s/Erika H. Arner_____

Leif R. Sigmond, Jr.
Jennifer M. Kurcz
MCDONNELL, BOEHNEN,
    HULBERT & BERGHOFF, LTD.
300 South Wacker Drive, Suite 3200
Chicago, Illinois 60606
(312) 913-0001

Steven F. Borsand
TRADING TECHNOLOGIES
    INTERNATIONAL, INC.
222 South Riverside, Suite 1100
Chicago, Illinois 60606
(312) 476-1000

Erika H. Arner
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700

C. Brandon Rash
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000

*Attorneys for Plaintiff-Appellee*
*Trading Technologies International, Inc.*

46

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 3, 2015, this BRIEF OF PLAINTIFF-APPELLEE

TRADING TECHNOLOGIES INTERNATIONAL, INC., was filed electronically

using the CM/ECF system and served via the CM/ECF system on registered

counsel.


<u>       /s/Donna Stockton</u>

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that this BRIEF OF PLAINTIFF-APPELLEE TRADING

TECHNOLOGIES INTERNATIONAL, INC. contains 11,668 words as measured

by the word processing software used to prepare this brief.


      <u>      /s/Erika H. Arner</u>